

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

NORTHERN DISTRICT OF TEXAS
**FILED**
MAR 2 5 2015
CLERK, U.S. DISTRICT COURT
By_____
Deputy

HAROLD CAPESTANY,[1]     §
    §
        Petitioner,     §
    §
v.     §     No. 4:13-CV-406-A
    §
WILLIAM STEPHENS, Director,     §
Texas Department of Criminal     §
Justice, Correctional     §
Institutions Division,     §
    §
        Respondent.     §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254 filed by Petitioner, Harold Capestany, a state

prisoner currently incarcerated in the Correctional Institutions

Division of the Texas Department of Criminal Justice (TDCJ),

against William Stephens, Director of TDCJ, Respondent. After

having considered the pleadings, state court records, and relief

sought by Petitioner, the Court has concluded that the petition

should be denied.

### I. Procedural History

In May 2010, in the 355th District Court of Hood County,

---

[1]In state court, Petitioner was also known as Harold Capestany-Cortes
and Harold Cortes Capestany. Adm. R., Clerk's R., 79, ECF No. 18-4.

Texas, Case No. CR11546, Petitioner was indicted for possession

of methamphetamine with intent to deliver (Count One), possession

of methamphetamine (Count Two), and "constructive" delivery of

methamphetamine (Count Three). Adm. R., SH8a-writ WR-41,482-04,

79-83, ECF No. 18-5. The indictment also included an enhancement

paragraph and five habitual-offender paragraphs. *Id.* On

February 17, 2011, following a jury trial, the jury, having found

Petitioner guilty on Counts Two and Three and true to the

sentencing-enhancement paragraphs, assessed his punishment at

ninety-nine years' confinement on each count. *Id.* 59, 64.

Petitioner appealed his convictions, but the Second District

Court of Appeals of Texas affirmed the trial court's judgments

and the Texas Court of Criminal Appeals refused his petition for

discretionary review. Adm. R., Mem. Op. 7, ECF No. 15-4; DA6 -

Pet. for Disc. Review, ECF No. 15-6. Petitioner also filed a

state habeas application challenging his convictions and raising

the claims presented herein. The state habeas judge, who also

presided over petitioner's trial, found that there were "no

controverted, previously unresolved issues of fact material to

the legality of Petitioner's conviction" and recommended the

application be denied. Adm. R., SH8a-writ WR-41,482-04, 75, ECF

No. 18-5. The application was forwarded to the Texas Court of

Criminal Appeals, which denied the application without written order.  *Id.* SH8a-writ WR-41,482-04, cover, ECF No. 18-4.  This federal petition for habeas relief followed.

The appellate court summarized the facts of the case as follows:

> Investigator Ray Miller with the Hood County Sheriff's Office arranged for a confidential informant to make a controlled purchase of methamphetamine from Capestany-Cortes.  Investigator Miller, along with two other investigators, met with the informant at a predetermined location, searched the informant and his vehicle, gave him money to make the controlled purchase, and equipped him with an audio and video recording device that looks like an ink pen.  Investigator Miller rode in the informant's vehicle to Capestany-Cortes's house.  Investigator Miller stayed in the vehicle while the informant went inside the house; the informant told Capestany-Cortes that Investigator Miller was his uncle.  The informant purchased less than one gram of methamphetamine, and he and Investigator Miller returned to the predetermined location to meet with the other investigators.
>
> The investigators obtained a search warrant for Capestany-Cortes's residence.  Capestany-Cortes was not at home, but during the search, he arrived in a vehicle with two other people.  Officers found approximately eight grams of methamphetamine in the backseat of the vehicle next to where Capestany-Cortes had been sitting.
>
> Over defense counsel's hearsay and confrontation objections, the video and audio recording of the controlled purchase was played for the jury at trial.  On the recording, the confidential informant commented on the quality of the methamphetamine he had last received from Capestany-Cortes's common-law wife Julie.  Capestany-Cortes responded that he was "fixing to get some more."

3

Adm. R., Mem. Op. 2-3, ECF No. 15-4.

## II.   Issues

Petitioner raises three grounds for habeas relief wherein he claims—

(1)   there is no evidence of a constructive transfer of a controlled substance as alleged in Count Three;

(2)   he received ineffective assistance of trial counsel because counsel failed to adequately and properly litigate his Fourth Amendment claim; and

(3)   the prosecutor engaged in prosecutorial misconduct by failing to correct perjured testimony by a state's witness.

Pet. 6-7, ECF No. 1.

## III.   Rule 5 Statement

Respondent believes that Petitioner has sufficiently exhausted his claims in state court and that the petition was timely filed.  Resp't's Answer 4, ECF No. 19.  28 U.S.C. §§ 2244(d) & 2254(b).  This is not a successive petition.  28 U.S.C. § 2244(b).

## IV.   Discussion

### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was

4

adjudicated on the merits in state court proceedings unless he

shows that the prior adjudication:  (1) resulted in a decision

that was contrary to, or involved an unreasonable application of,

clearly established federal law, or (2) resulted in a decision

that was based on an unreasonable determination of the facts in

light of the evidence presented in the state court.  28 U.S.C. §

2254(d).  A decision is contrary to clearly established federal

law if the state court arrives at a conclusion opposite to that

reached by the Supreme Court of the United States on a question

of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v.*

*Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  A state court

decision will be an unreasonable application of clearly

established federal law if it correctly identifies the applicable

rule but applies it unreasonably to the facts of the case.

*Williams*, 529 U.S. at 407-08.

The statute further requires that federal courts give great

deference to a state court's factual findings.  *Hill*, 210 F.3d at

485.  Section 2254(e)(1) provides that a determination of a

factual issue made by a state court shall be presumed to be

correct.  The presumption of correctness applies to both implicit

5

and explicit factual findings. *Young v. Dretke,* 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Finally, when the Texas Court of Criminal Appeals denies a federal claim in a state habeas corpus application without written order, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Johnson v. Williams,* 133 S. Ct. 1088, 1094 (2013); *Harrington v. Richter,* 562 U.S. 86, 98-99 (2011). Further, absent express findings of fact, a federal court may assume the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied, and imply fact findings consistent with the state court's disposition. *Townsend v. Sain,* 372 U.S. 293, 314 (1963)[2];

---

[2]The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver,* 645 F.3d 327, 330 n.2 (5th Cir. 1981).

*Pondexter v. Dretke,* 346 F.3d 142, 148 (5th Cir.2003); *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002). With these principles in mind, the court addresses Petitioner's claims.

### *(1) No Evidence*

In his first ground, petitioner claims there is no evidence that he knowingly or intentionally delivered a controlled substance to Officer Miller, the narcotics investigator, by constructive transfer as alleged in Count Three.[3] Pet. Attach. 3, ECF No. 1. A state prisoner's no-evidence claim is treated the same as a claim of insufficiency of the evidence. *Gibson v. Collins,* 947 F.2d 780, 782 (5th Cir. 1991). Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia,* 443 U.S. 307 (1979). In *Jackson,* the Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the

---

[3]Respondent asserts that this claim is not cognizable on state habeas review and, thus, the claim was procedurally defaulted in state court, thereby precluding federal habeas review. Resp't's Answer 9-10, ECF No. 19. Under Texas law, a claim of insufficient evidence is not cognizable on state habeas review, however, as correctly noted by Petitioner, a claim of no evidence is cognizable. Pet'r's Reply 4-6, ECF No. 29. *Ex parte Knight,* 401 S.W.3d 60, 64 (Tex. Crim. App. 2013).

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. To determine whether the evidence is sufficient to support a state criminal conviction, a federal habeas court looks to state law for the substantive elements of the relevant criminal offense. *Id.* at 324 n.16; *Dupuy v. Cain,* 201 F.3d 582, 589 (5th Cir. 2000).

Petitioner was charged with "constructive transfer" of a controlled substance under Count Three, the elements of the offense being that (1) a person (2) intentionally or knowingly (3) delivers (4) a controlled substance. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2010). "Deliver" means to transfer, actually or constructively, to another a controlled substance, whether or not there is an agency relationship. *Id.* § 481.002(8) (West Supp. 2013). The term includes offering to sell a controlled substance. *Id.* The jury was given the following definition of "constructive transfer" for guidance:

> "Constructive transfer" is the transfer of a controlled substance either belonging to an individual or under his direct or indirect control, by some other person or manner at the instance or direction of the individual accused of such constructive transfer. It also includes an offer to sell a controlled substance. Proof of an offer to sell must be corroborated by a person other than the offeree or by evidence other than a statement of the offense.

8

Adm. R., Clerk's R. 34, ECF No. 16-2.

Petitioner's argument is that there is no evidence of a constructive transfer to Officer Miller, the officer to whom the state alleged delivery in the indictment.  Relying on *Daniels v. State,* 754 S.W.2d 214 (Tex. Crim. App. 1988), and other state-court cases, he argues that "constructive transfer" requires that the transferor (1) must have direct or indirect control of the substance transferred and (2) *must know of the existence of the transferee.*  Pet'r Reply 7-8, ECF No. 29.  Petitioner asserts–

> The state never presented any evidence of the second
> element, that prior to the alleged delivery Petitioner
> knew the existence of the ultimate transferee Ray
> Miller to the extent that Petitioner contemplated that
> his alleged initial transfer would not be the final
> transaction in the chain of distribution.   [T]he audio-
> video . . . clearly show[s] that the confidential
> informant never told or even suggest[ed] to Petitioner
> that alleged drugs were being purchased on behalf of
> Ray Miller or any third party. . . .   [W]ithout the
> confidential informant telling Petitioner the alleged
> drugs are being purchased on behalf of a third party
> Petitioner cannot be guilty of delivery by constructive
> transfer to Ray Miller as charged in the indictment.

*Id.* 9-10.

Petitioner asserts the video recording clearly shows–

> "1.)  Petitioner did not hand Officer Ray Miller any
>       alleged methamphetamine.

> "2.)  Video shows petitioner never spoke to Ray Miller.

> "3.)  There is no audio that CI told petitioner that CI

was purchasing alleged drugs on behave [sic] of
Ray Miller or any third party.

"4.) Video shows CI did not hand alleged drugs to Ray
Miller in the presents [sic] of petitioner.

"5.) Audio-video shows petitioner did not instruct CI
to give any alleged drugs to Ray Miller.

"6.) Audio-video clearly shows that petitioner was not
acting with CI in the alleged constructive
transfer to Ray Miller.

"7.) Ray Miller at trial never testified that he heard
CI tell petitioner, CI was purchasing alleged
drugs on behave [sic] of Ray Miller.

"8.) Ray Miller at trial did not testify that CI told
him that CI told petitioner CI was purchasing
alleged drugs on behave [sic] of Ray Miller."

*Id.*

As the factfinder, the jury was responsible for determining

the weight and credibility of the evidence, resolving conflicts

in the evidence, and choosing among reasonable constructions of

the evidence. *United States v. Moreno,* 185 F.3d 465, 471 (5th

Cir. 1999). This Court cannot substitute its view of the

evidence for that of the factfinder. *Alexander v. McCotter,* 775

F.2d 595, 598 (5th Cir. 1985). Although the video recording was

not made available to the Court, based on the other evidence at

trial, the jury could have reasonably found that Petitioner

constructively delivered a controlled substance to the

10

confidential informant as an agent for Miller. *Young v. State,*
183 S.W.3d 699, 706 (Tex. App.-Tyler 2005, pet. ref'd).  It was
not necessary that the state show that Petitioner knew Miller's
identity or was acquainted with Miller.  *Mallett v. State,* Nos.
14-11-00094 & 14-11-00095-CR, 2012 WL 3776357, at *3 (Tex.
App.-Houston [14th Dist.] 2012, no pet.).  Miller accompanied the
informant to Petitioner's house after midnight on the night in
question posing as the informant's uncle and waited in the car 10
to 15 minutes while the informant and Petitioner talked on the
porch and then entered the residence to conduct the transaction,
Petitioner could reasonably contemplate that the informant was
acting with Miller in some fashion.  *Gonzalez v. State,* 588
S.W.2d 574, 577-78 (Tex. Crim. App. 1979); *Williams v. State,* No.
09-05-520-CR, 2007 WL 685634, at *3 (Tex. App.-Beaumont Mar. 7,
2007).

Even if the evidence is insufficient to prove a constructive
transfer, the evidence is sufficient to support Petitioner's
conviction on the theory of an offer to sell.  The jury could
have considered Petitioner's statements that he was "fixing to
get some more" and he could "close it in" as an offer to sell.
Adm. R., DA11-RR, vol. 3, 34-35, ECF No. 16-4.  Evidence that the
offeror had possession or access to the controlled substance

11

offered can satisfy this requirement. *See Evans v. State*, 945
S.W.2d 259, 261 (Tex. App.–Houston [1st Dist.] 1997, pet. ref'd).
"[W]hen delivery is by offer to sell no transfer need take place.
A defendant need not even have any controlled substance" on him
at the time of the offer. *Stewart v. State*, 718 S.W.2d 286, 288
(Tex. Crim. App. 1986). Thus, viewing the evidence in the light
most favorable to the prosecution, the jury could have found
Petitioner guilty beyond a reasonable doubt of constructive
transfer as charged in Count Three of the indictment.

### (2) *Ineffective Assistance of Counsel*

In his second ground, Petitioner claims counsel was
ineffective by failing to move to suppress evidence discovered in
the search of his residence and/or move for a *Franks*[4] hearing on
the ground that the search warrant affidavit was inadequate and
contained conclusory allegations, falsehoods, and "stale"
information. Pet. 6 & "Attachment Ground Two" 1-9, ECF No. 1;
Adm. R., SH8a-writ WR-41-482-4, 67-70, ECF No. 18-4. A criminal
defendant has a constitutional right to the effective assistance
of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*,
469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S.

---

[4]*Franks v. Delaware*, 438 U.S. 154 (1978).

668, 688 (1984). An ineffective assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* at 688.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective assistance claim has been reviewed on its merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state court record. *Harrington*, 562 U.S. at 101; *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). The Supreme Court recently emphasized—

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether

13

defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington,* 562 U.S. at 101 (quoting *Williams,* 529 U.S. at 410).

Accordingly, it is necessary only to determine whether the state courts' rejection of petitioner's ineffective assistance claim is contrary to or an objectively unreasonable application of *Strickland. Bell,* 535 U.S. at 698-99; *Kittelson v. Dretke,* 426 F.3d 306, 315-17 (5th Cir. 2005).

After the controlled purchase, Officer Gary Clark, also an investigator with the Hood County Sheriff's Department, prepared a probable-cause affidavit in support of a search warrant, wherein he averred, in relevant part:

> [5]b.    On or about January 19, 2010, I spoke with a confidential informant, who shall hereinafter be referred to as CI. CI is a citizen of this State and has asked not to be named or otherwise identified in relation to this affidavit and the search warrant it requests. I have agreed to withhold CI's name and identity for purposes of CI's personal security and to avoid compromising investigations involving CI's information.

14

c.      CI told me that CI has reason to believe that
        suspected party is in possession of illegal
        narcotics, specifically Methamphetamines, and
        is involved in the selling of these illegal
        narcotics at the suspected place, as well as
        other places in Hood County, Texas.  CI
        stated that CI would be able to purchase
        illegal narcotics from Suspected Party, at
        the direction of Affiant.

d.      I believe CI to be a credible person and
        worthy of belief for the following reason: CI
        has acted as an informant for me in the past,
        giving me information concerning illegal
        activity on several occasions.  On each of
        these occasions, CI's information proved to
        be true.  CI has correctly identified
        methamphetamine and other controlled
        substances.

e.      On or about January 19, 2010, CI informed me
        that suspected party was in possession of
        Methamphetamines.  I traveled with CI to an
        undisclosed location, where CI contacted
        suspected party to arrange an illegal
        narcotics transaction.  Before the CI went
        into the suspected residence, I, Hood County
        Sheriff's Investigator Gary Clark searched
        the person of the CI.  I, Investigator Gary
        Clark determined that after a thorough search
        of the CI's person CI had no contraband in
        the CI's possession or on the CI's person.  I
        gave CI a documented amount of United State's
        Currency.  I gave the CI a recording device
        to place on the CI's person that was capable
        of making an accurate audio recording of
        conversations with CI.

f.      CI was then transported to the suspected
        residence and met with suspected party Harold
        Capestany-Cortes.  Suspected party delivered
        a small plastic baggie containing a
        crystalline substance that appeared to be

15

methamphetamine to CI. The substance was later field tested and the results showed a positive test for methamphetamine.

g.        I listened to the radio recording of events and conversations that occurred while the CI was at the undisclosed residence. I heard the suspected party and CI discuss the quantity and quality of the substance purchased.

h.        After reviewing the video footage from the recording device, I was able to verify that the CI did not have any interaction with any other persons other than the suspected person and Police Officers during this incident.

SH8a-writ WR-41,482-04, 67-70, ECF No. 18-4.

Petitioner asserts the affidavit is defective because it contains:

1)    Conclusory statements made by the confidential informant;

2)    Conclusory statements made by Officer Clark;

3)    False statements made by Officer Clark with reckless disregard for the truth; and

4)    Stale information.

Pet. "Attachment Ground Two" 1-2, ECF No. 1.

According to Petitioner, paragraphs (c), (e), and (f) of the affidavit are conclusory and provide no basis for making a judgment regarding probable cause; Officer Clark's statements in paragraph (e) are false because he and the confidential informant stopped at another location in route to Petitioner's residence; the confidential informant had interaction with other persons at

16

the first residence and at Petitioner's residence; the
confidential informant was not searched after the first stop; the
confidential informant and Officer Miller, not Officer Clark,
conducted the transaction; and, paragraphs (g) and (h) provide
stale and/or false information because the video recording of the
transaction is dated 11-13 and 11-14-2008. *Id.* 3-9. Petitioner
argues counsel could have successfully challenged the warrant if
he had adequately and properly litigated this Fourth Amendment
claim.

The Fourth Amendment provides that warrants may not issue
except on a showing of probable cause. U.S. CONST. amend. IV.
Under state law, a search warrant may be obtained from a
magistrate only after submission of an affidavit setting forth
substantial facts establishing probable cause. TEX. CODE CRIM.
PROC. ANN. art. 18.01(b) (West Supp. 2013). Probable cause exists
if, under the totality of the circumstances set forth in the
affidavit before the magistrate, there is a "fair probability"
that contraband or evidence of a crime will be found in a
particular place at the time the warrant is issued. *Illinois v.
Gates,* 462 U.S. 213, 238 (1983); *Flores v. State,* 319 S.W.3d 697,
702 (Tex. Crim. App. 2010). The magistrate may interpret the
affidavit in a nontechnical, commonsense manner and may draw

17

reasonable inferences from the facts and circumstances contained

within its four corners. *Flores,* 319 S.W.3d at 702; *Cassias v.*

*State,* 719 S.W.2d 585, 587-88 (Tex. Crim. App. 1986) (op. on

reh'g). In *United States v. Ventresca,* the Supreme Court

described the flexibility that should be accorded to magistrates:

> These decisions reflect the recognition that the
> Fourth Amendment's commands, like all constitutional
> requirements, are practical and not abstract. If the
> teachings of the Court's cases are to be followed and
> the constitutional policy served, affidavits for search
> warrants, . . ., must be tested and interpreted by
> magistrates and courts in a commonsense and realistic
> fashion. They are normally drafted by nonlawyers in
> the midst and haste of a criminal investigation.
> Technical requirements of elaborate specificity once
> exacted under common law pleadings have no proper place
> in this area. A grudging or negative attitude by
> reviewing courts toward warrants will tend to
> discourage police officers from submitting their
> evidence to a judicial officer before acting.
>
> This is not to say that probable cause can be made
> out by affidavits which are purely conclusory, stating
> only the affiant's or an informer's belief that
> probable cause exists without detailing any of the
> 'underlying circumstances' upon which that belief is
> based. Recital of some of the underlying circumstances
> in the affidavit is essential if the magistrate is to
> perform his detached function and not serve merely as a
> rubber stamp for the police. However, where these
> circumstances are detailed, where reason for crediting
> the source of the information is given, and when a
> magistrate has found probable cause, the courts should
> not invalidate the warrant by interpreting the
> affidavit in a hypertechnical, rather than a
> commonsense, manner. Although in a particular case it
> may not be easy to determine when an affidavit
> demonstrates the existence of probable cause, the

> resolution of doubtful or marginal cases in this area
> should be largely determined by the preference to be
> accorded to warrants.

380 U.S. 102, 108-09 (1965) (citation omitted). Thus, reviewing

courts give great deference to a magistrate's determination of

probable cause. *Gates,* 462 U.S. at 236; *Rodriguez v. State,* 232

S.W.3d 55, 59-60 (Tex. Crim. App. 2007). "[T]he duty of the

reviewing court is simply to ensure that the magistrate had a

substantial basis for concluding that probable cause existed."

*Gates,* 462 U.S. at 238-39 (internal quotations omitted).

Here, there was such a substantial basis on the face of the

affidavit for the issuing magistrate to make a determination that

probable cause existed for the issuance of the search warrant.

Although Officer Miller, not Officer Clark, was in the car with

the confidential informant, Officer Clark was involved in the

operation from the beginning and conducted surveillance of the

entire transaction. Adm. R., DA10-supp RR 1 of 3, 6-7, ECF No.

16-3. Nor was the judge's probable-cause determination basely

solely on conclusory statements by Officer Clark. *Rodriguez v.*

*State,* 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). Officer Clark's

testimony was corroborated by the statements of the informant who

was known to the officer and had given him reliable information

in the past, his participation in the controlled purchase, the

video recording of the transaction, and the field test of the
contraband.   Further, contrary to Petitioner's allegations, it
appears the allegations were closely related to the time of the
issuance of the warrant.[5]   These additional facts provided
sufficient corroboration to establish probable cause.   Counsel is
not required to make frivolous or futile motions or objections.
*Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002).   It
necessarily follows that counsel was not ineffective by
challenging the affidavit, and the state courts' denial of the
claim was a reasonable application of *Strickland* based on the
evidence presented in state court.   28 U.S.C. § 2254(d).

### (3) Prosecutorial Misconduct

Lastly, under his third ground, Petitioner claims the state
engaged in prosecutorial misconduct by failing to correct
perjured testimony by Officer Miller.   Pet. 7 & "Attachment
Ground Three" 1-5, ECF No. 1.   The prosecution's knowing use of,
or failure to correct, material, false testimony violates
constitutional due process.   *Giglio v. United States*, 405 U.S.
150, 153-54 (1972); *Napue v. Illinois*, 360 U.S. 264, 269-70

---

[5]Petitioner cites the Court to a CD/DVD on which the video recording was
downloaded, numbered as State's Exhibit No. 58 and admitted at trial, in
support of this claim, however the CD/DVD was not made available to the Court.

(1959).

Petitioner complains of the following testimony by the
officer in response to the prosecutor's question regarding
whether the officer took steps to ensure that the confidential
informant did not have any drugs on his person before going to
Petitioner's residence:

> We did.  We met with the confidential informant at a
> predetermined location, we searched the person of the
> confidential informant, searched the vehicle.  At no
> point in time was the confidential informant not in the
> vehicle with me as we traveled to the location.

Adm. R., DA11-RR 1 of 5, vol. 3, 23, ECF No. 16-4.

Petitioner asserts that Officer Miller's testimony was false
because the video recording shows the confidential informant and
Officer Miller stopped at another residence where the informant
had contact with an unidentified person; the officer did not
search the informant after leaving the first residence and
proceeding to Petitioner's residence; and the informant had
contact with other persons at Petitioner's residence.  Pet.
"Attachment Ground Three," 3, ECF No. 1.

The record does not reflect that trial counsel objected to
the testimony nor was the claim raised on direct appeal.
Instead, the claim was raised for the first time in Petitioner's

21

state habeas application, which was denied without written order.

As such, the state did not expressly reject the claim on this

procedural ground.   Nevertheless, Texas courts strictly apply the

contemporaneous-objection rule.   Thus, the rule constitutes an

adequate and independent state-law procedural ground sufficient

to bar federal habeas review of the claim.   *Turner v. Quarterman,*

481 F.3d 292, 301 (5th Cir. 2007); *Parr v. Quarterman,* 472 F.3d

245, 253 (5th Cir. 2006).   Absent Petitioner's demonstration of

good cause for the default and actual prejudice as a result of

the alleged constitutional violation, or that a miscarriage of

justice will result, the Court may not consider his claim.   *Ogan*

*v. Cockrell,* 297 F.3d 349, 356 (5th Cir. 2002).

Even assuming the claim is immune from the rule, it is not

clear that the state knowingly used false evidence.   In order to

prevail on his prosecutorial-misconduct claim, Petitioner must

establish that his conviction was obtained by the use of perjured

testimony that the prosecutor knew at the time to be false or

later discovered to be false and allowed to go uncorrected.   *See*

*Napue v. Illinois,* 360 U.S. 264, 269 (1959).   Minor

inconsistencies in testimony by state witnesses do not establish

the government's knowing use of false testimony.   *United States*

*v. Griley,* 814 F.2d 967, 971 (4th Cir. 1987).   Respondent

22

correctly argues that the minor inconsistencies in Officer Miller's testimony are no basis for disregarding the weight and credibility afforded the testimony by the jury. *United States v. Garza,* 990 F.2d 171, 175 (5th Cir. 1993). Resolving inconsistencies or discrepancies in the officer's testimony was the responsibility of the jury. *Jackson,* 443 U.S. at 318. The jury was free to credit or discredit the officer's testimony and disregard inconsistencies, which were not substantial, between the his testimony and the video recording. *United States v. Baptiste,* 264 F.3d 578, 589 (5th Cir. 2001).

In summary, the record supports the state courts' denial of the claims presented in this federal habeas proceeding. The state courts' adjudication of the claims is not contrary to or involve an unreasonable application of clearly established federal law, as determined by the Supreme Court, in light of the record as a whole. Accordingly, it is entitled to deference and the presumption of correctness.

For the reasons discussed herein,

The court ORDERS the petition of Petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of

appealability be, and is hereby, denied.

SIGNED March 25, 2015.

_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE